IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 19-cv-03453-MSK

**LORETTA JANE GONZALES,**

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

## OPINION AND ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION

**THIS MATTER** comes before the Court on the Plaintiff's Complaint **(#1)**, the Plaintiff's Opening Brief **(#11)** and the Defendant's Response **(#15)**. No Reply was filed. For the following reasons, the Commissioner's decision is reversed, and the matter is remanded for further proceedings.

### I. JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

### II. BACKGROUND

**A. Procedural History**

Plaintiff Loretta Gonzales ("Ms. Gonzales") seeks judicial review of a final decision by the Defendant Commissioner ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. In April 2013, Ms. Gonzales

filed for DIB, claiming she became disabled as of April 11, 2013.  **(#9 at 165)**.  In July 2016, an ALJ issued a partially favorable decision, awarding Ms. Gonzales benefits from April 11, 2013 through August 5, 2015.  **(#9 at 168-178)**.  Ms. Gonzales requested review, and the Appeals Council subsequently vacated the decision and remanded the case back to a new ALJ for further proceedings.  **(#9 at 187-189, 325-327)**.  The Appeals Council found the initial decision did not consider the period after August 2015 through the date of the decision, July 20, 2016.  Thus, it directed the ALJ to include findings (e.g. evaluation of claimant's impairments, articulate RFC) and obtain new evidence if necessary through the date of the decision.  **(#9 at 187-198)**.

On June 19, 2018, the ALJ held a new hearing.  **(#9 at 99)**.  Then, on October 18, 2018, the ALJ issued Ms. Gonzales an unfavorable Decision ("Decision").  **(#9 at 16)**.  Ms. Gonzales appealed the Decision to the Appeals Council asserting it was not supported by substantial evidence, and on October 9, 2019, the Appeals Counsel denied her Request for Review.  **(#9 at 1-5)**.  Ms. Gonzales now appeals the final agency action to this Court.  *See Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (stating that when the Appeals Council denies further review, the ALJ's decision is deemed the final decision of the Commissioner).

**B.     Pertinent Factual Background**

The Court offers a summary of the facts here and elaborates as necessary in its discussion.  Also, because the dispositive issue in this appeal concerns the weight given to a treating psychiatrist's opinion as to Ms. Gonzales' mental impairments, the Court summarizes only the medical evidence relevant to its decision.

At the time of her alleged onset of disability, Ms. Gonzales was 54 years old.  **(#9 at 28)**.

She previously worked as a teacher's aide, an automation assistant at the U.S. Geological Survey, a general clerk, and a jewelry sales person.   In 2014, with the support of her psychiatrist, Ms. Gonzales resigned from her position at the U.S Geological Survey due to "exhaustion, anxiety, poor concentration [or] attention."   **(#9 at 832)**.   At the 2018 hearing, Ms. Gonzales testified that she currently works part-time at a public library re-shelving books and other materials.   **(#9 at 27-, 106-111, 118-124)**.

The medical records confirm that Ms. Gonzales suffers from long-standing anxiety, depression, post-traumatic stress disorder ("PTSD"), cognitive decline, adjustment disorder, and ADHD.   **(#9 at 770-853, 1054)**.   In 2013, Ms. Gonzales was hospitalized for depression and she began treatment with psychiatrist Harold Figueroa, M.D.   **(#9 at 770, 1054)**.   In March 2014, Dr. Figueroa wrote a letter to Ms. Gonzales' employer indicating her desire to resign from her job at the U.S. Geological Survey due to exhaustion, anxiety, and inability to concentrate. **(#9 at 832)**.   He noted that her symptoms persist even with the use of psychiatric medications and therapeutic sessions.   **(#9 at 832)**.   From 2013-2017, Dr. Figueroa regularly provided treatment to Ms. Gonzales and managed her medication regimen.   During these visits, Dr. Figueroa conducted mental status examinations, and his treatment notes indicated varied results. On certain occasions, Ms. Gonzalez displayed unremarkable mental status results whereas at other times, she was anxious and/or depressed.   **(#9 at 768-771, 894-909, 1062-1070)**. Notably, in October 2016, the record reflects Ms. Gonzales contacted Dr. Figueroa's emergency answering service and reported she was having panic attacks that were affecting her ability to work.   In response, Dr. Figueroa called Ms. Gonzales, who reported suffering high anxiety and stress, feelings of being overwhelmed, and having panic attacks at her work place.   Dr. Figueroa

scheduled Ms. Gonzales for an office visit the following day and recommended she continue with her medication regimen.   **(#9 at 1068-1069)**.

On June 8, 2015, Dr. Figueroa completed three "Medical Source Statement" forms for Ms. Gonzales.   He opined that Ms. Gonzales' mental impairments caused moderate, marked, and extreme limitations in her ability to function in a work environment.   Specifically, Dr. Figueroa stated that Ms. Gonzales' mental impairments caused (i) moderate limitations in her ability to carry out daily activities and (ii) marked limitations in her ability to maintain social functioning; concentration, persistence or pace resulting in the failure to complete tasks in a timely manner[1] and the decompensation or withdrawal from situations or the exacerbation of symptoms.   **(#9 at 842-852)**.   Dr. Figueroa also noted that Ms. Gonzales had suffered from PTSD and cognitive decline since 2011 and that he had recently ordered a "neuropsychological assessment to determine clinical status of deficits."   **(#9 at 845)**.   Additionally, Dr. Figueroa based his opinion of her limitations on the "complexities" of Ms. Gonzales' PTSD coupled with her cognitive decline.   **(#9 at 848)**.

As noted, Dr. Figueroa ordered a neuropsychological examination, which was conducted on December 23, 2015 by John Zarske, Ed.D.   **(#9 at 1053)**.   At the outset, Dr. Zarske noted that the study was "inconclusive due to variable performance validity related to a psychiatric condition(s)" and attributed Ms. Gonzales' test performances to her "minimum levels of functioning."   **(#9 at 1053)**.

During the testing session, Dr. Zarske observed Ms. Gonzales to be "exhausted,

---

[1]   On one of the forms, Dr. Figueroa opined Ms. Gonzales had an extreme limitation in the area of maintaining concentration, persistence, and pace in a work setting.   **(#9 at 844)**.

4

distractible, and overwhelmed" despite reporting she had slept ten hours the previous night.  **(#9 at 1056)**.  Dr. Zarske noted Ms. Gonzales exhibited a rapid rate of speech and frequently stammered and stuttered.   Dr. Zarske was unable to interpret Ms. Gonzales' "invalid" test results and opined that her "fatiguability, inattention, racing thoughts, depression, and anxiety affected her ability to give maximum effort" during the examination.  **(#9 at 1057)**.  He further opined that Ms. Gonzales would likely "function best in a work environment with few distractions", would need frequent breaks during work activity, and that a part-time placement would be optimal for her.  **(#9 at 1057-1058)**.

**C.   The ALJ's Decision**

An individual is eligible for DIB under the Social Security Act if he or she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act.   42 U.S.C. § 423(a)(1).   An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his [or her] previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy …."  42 U.S.C. § 423(d)(2)(A).

On October 18, 2018, the ALJ issued Ms. Gonzales an unfavorable Decision.   Using the conventional multi-step analytical tool, the ALJ found at step one that Ms. Gonzales had not engaged in substantial gainful activity since April 11, 2013, the alleged onset date.  **(#9 at 19)**.  At step two, the ALJ found Ms. Gonzales had the following severe impairments: left shoulder tendinopathy, unspecified mood disorder, anxiety disorder not otherwise specified, and attention deficit hyperactivity disorder.  **(#9 at 19)**.

At step three, the ALJ found Ms. Gonzales did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  **(#9 at 20)**.  In making this finding, the ALJ considered Ms. Gonzales' mental impairments, finding she had (i) moderate limitations in the activities of "concentrating, persisting, or maintaining pace" and (ii) mild limitations in the activities of "adapting or managing oneself", "interacting with others", and "understanding, remembering, or applying information".[2]  **(#9 at 20-21)**.

The ALJ then assessed Ms. Gonzales' RFC and determined that she:

> has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) except she can occasionally climb ladders, scaffolds, stairs, and ramps.  The claimant can occasionally crawl, as well as frequently balance, stoop, kneel and crouch.  She can occasionally reach overhead with her nondominant left upper extremity.  The claimant has no other manipulative, visual, or communicative limitations, but must avoid more than occasional exposure to extreme cold, unprotected heights, or concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gasses.  Additionally, the claimant is able to understand and remember moderately complex tasks that require independent work and attention to detail, and which can be learned and mastered within a one to three month period.  Further, she can sustain concentration, persistence, and pace for these tasks over an 8-hour workday in a 40 hour work week.  The claimant can also interact appropriately with others, make independent work decisions, tolerate task changes, and is able to travel as well as recognize and avoid work hazards.

---

[2] The ALJ's analysis followed the process for evaluating mental impairments, and the categories of such impairments, as prescribed by the Commissioner's regulations.  These include the "psychiatric review technique," or "PRT," and the so-called "paragraph B" and "paragraph C" criteria for describing adult mental disorders.  *See generally* 20 C.F.R. §§ 404.1520a(c)–(d); *see also* Social Security Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996).  The regulations identify four functional areas in which the ALJ will rate the degree of a claimant's functional limitations, including: (1) the ability to understand, remember or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself.   20 C.F.R. § 404.1520a(c)(3).

**(#9 at 22)**.  In crafting Ms. Gonzales' RFC, the ALJ gave "little weight" to Dr. Figueroa's opinion.   She also gave "little weight" to Dr. Zarske's opinion.   **(#9 at 25-26)**.   Instead, at step four, the ALJ found Ms. Gonzales capable of performing her past relevant work as a general clerk, and supplemented her findings with alternatives at step five.   **(#9 at 27-29)**.   At step five, based on the testimony of the vocational expert ("VE"), the ALJ concluded that, considering Ms. Gonzales' age, education, work experience, and RFC, she could perform a reduced range of medium, unskilled jobs in the national economy such as: hand packager, merchandise deliverer, and bagger.   **(#9 at 29)**.

The ALJ therefore found Ms. Gonzales was not disabled as defined by the Social Security Act.   **(#9 at 29)**.

### III.   STANDARD OF REVIEW

Though the Court's review is *de novo*, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence.   *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance."   *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).   The Court may not reweigh the evidence, it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision.   *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Thus, here, the question before the Court is whether there is substantial record evidence to support the ALJ's determination that Ms. Gonzales could perform medium work with certain limitations.

### IV.  DISCUSSION

Ms. Gonzales asserts several issues in her appeal.  First, she contends that the ALJ's Decision did not properly weigh the medical opinion evidence and failed to state valid reasons for rejecting her treating sources' opinions.  Second, Ms. Gonzales asserts the ALJ erred in evaluating her credibility.  Because the first argument is dispositive as to treating psychiatrist, Dr. Figueroa, and requires remand, the Court will focus on it.

### A.  The ALJ's Evaluation of Dr. Figueroa's Opinion

A treating physician's opinion is generally entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  *Romo v. Commissioner*, 748 Fed. Appx. 182, (10th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2));[3]  *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).  When discounting the opinion of a treating physician, the ALJ must provide sound reasons to do so.  20 C.F.R. § 404.1527(d)(2).  For example, the ALJ may find that the treating physician has contradicted his or her own assessments elsewhere, or where other physicians' opinions are supported by superior medical evidence.  *See id.*.  However, even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference, and the ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician

---

[3] Pursuant to a change in the Social Security Administration's regulations, effective March 27, 2017, treating physician opinions will no longer be given controlling weight.  However, the prior rule remains applicable to claims—like Ms. Gonzales'—filed before that date.  Rescission of Social Security Rulings 96–2P, 96–5P, and 06–3P, 2017 WL 3928298, at *1 (2017).

> is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (internal quotations omitted). In applying these factors, the ALJ must make findings and reasoning sufficiently specific so the weight given is clear to subsequent reviewers. *Id.*

Here, the ALJ's Decision credited "little weight" to Dr. Figueroa's opinion. **(#9 at 25)**. In the Decision, the ALJ stated:

> In a medical source statement, the claimant's treatment provider, Dr. Harold Figueroa, M.D., indicated that she experiences anxiety with motor tension, apprehensive expectation, vigilance, automonomic hyperactivity, scanning, and persistent irrational fear. He also stated the claimant has social phobia, which makes her reluctant to engage in particular activities. Dr. Figueroa indicated that the claimant met a listing because she had marked difficulties in maintaining social functioning and episodes of decompensation. Additionally, Dr. Figueroa found that the claimant had extreme limitations in concentration, persistence, or pace. As a result, he opined that the claimant was unable to work. Further, he advised the claimant to pursue disability because her symptoms persisted despite her adherence to psychiatric medications and regular therapeutic sessions. The undersigned gives these opinions little weight. The opinion that the claimant has marked or extreme limitations in the areas identified by Dr. Figueroa are assigned little weight because they are not supported by the medical evidence. While the claimant has received inpatient treatment, she has not experienced multiple episodes of decompensation that have lasted for two or more weeks. Furthermore, psychological evaluations indicate the claimant's attention to be good, and show her anxiety and depression to be longitudinally decreasing. Finally, the undersigned gives little weight [to] Dr. Figueroa's statement that the claimant is unable to work, as a statement by a medical source that a claimant is "disabled" does not mean that the claimant meets the statutory definition of disability, which is an issue reserved to the Commissioner.

**(#9 at 25)**.

The Commissioner argues that the ALJ properly evaluated Dr. Figueroa's opinion and reasonably found it was inconsistent with his own treatment notes and mental status examinations conducted by other providers. **(#15 at 8-12)**.

As an initial matter, the Court agrees that the decision as to whether a claimant can work is reserved to the Commissioner, but that simply means that a doctor's conclusion is not determinative. The underlying opinions of the claimant's limitations are not rejected; instead, they must be evaluated in the customary two-step analytical process to determine whether such findings (here, Dr. Figueroa's findings) are entitled to controlling weight.

The ALJ did not engage in this analysis, and consequently it constitutes legal error. Such error can be harmless, however, if discussion elsewhere in the Decision provides reasons sufficient to reject a treating physician's opinion or to give it less than controlling weight. When an ALJ rejects a treating physician's opinion, he or she must identify specific, good reasons for weight given to the opinion. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). This requires identification of specific evidence in the record that the ALJ found to be inconsistent with Dr. Figueroa's opinion, as well as demonstration that consistent evidence was considered. *See Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996).

As to the ALJ's first inquiry—whether the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques—the record contains numerous instances where Dr. Figueroa personally observed Ms. Gonzales in a clinical setting. Dr. Figueroa began treating Ms. Gonzales for her mental impairments in May 2013 and saw her regularly from then through at least February 2017 when Ms. Gonzales relocated from Arizona to Colorado. **(#9 at 771, 1065)**. There is no evidence in the record contrary to Dr. Figueroa's diagnosis that Ms. Gonzales suffered from PTSD, cognitive decline, and adjustment disorder. **(#9 at 768-771, 894-909, 1062-1070)**. As part of his examinations of Ms. Gonzales, Dr. Figueroa administered

clinical tests such as the Global Assessment of Functioning ("GAF")[4] to measure her level of functioning.  (**#9 at 768-771, 894-909, 1062-1070**).   From 2013-2017, Dr. Figueroa reviewed and directed Ms. Gonzales' medication regimen to help control her symptoms.   He prescribed multiple medications including Paxil and Klonopin[5] and has adjusted them based on his own observations of Ms. Gonzales' progress along with her subjective reports.   (**#9 at 768-771, 894-909, 1062-1070**).

Dr. Figueroa's clinical observations as to Ms. Gonzales' mental impairments are well-documented throughout the record.   From May 2013, he repeatedly noted that Ms. Gonzales: (i) displayed an anxious and/or nervous mood and appeared tense; (ii) had high levels of stress; (iii) was unable to drive; and (iii) scored from 50-72 on the GAF test.   (**#9 at 768-771, 894-909, 1062-1070**).   The medical evidence shows that although the severity of Ms. Gonzales' symptoms waxed and waned, even with medication she has a persistent problem with depression and anxiety and requires prescription medication to function.   As Dr. Figueroa stated, despite "adherence to psychiatric medications and regular therapeutic sessions", Ms. Gonzales continued to suffer from exhaustion, anxiety, and poor concentration.   (**#9 at 832**).   Thus, the Court finds Dr. Figueroa's opinions were supported by medically acceptable clinical and laboratory diagnostic techniques.

The Court now turns to the ALJ's second inquiry—whether Dr. Figueroa's opinion is

---

[4]     The GAF is a "numeric scale used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of an individual, e.g., how well one is meeting various problems-in-living. Scores range from 100 (extremely high functioning) to 1 (severely impaired)." https://www.helenfarabee.org/poc/view

[5]     Paxil and Klonopin are prescription medications used to treat symptoms caused by depression, anxiety, and panic disorder.   https://www.rxlist.com

inconsistent with the other substantial evidence in record.   In rendering his opinion, Dr. Figueroa completed "Medical Source Statements" as to Ms. Gonzales' diagnoses of both depression and anxiety where he made brief written statements and checked multiple boxes indicating Ms. Gonzales had "marked" and "extreme" limitations[6] as to a number of mental functions.   As to her ability to maintain social functioning, avoid episodes of deterioration or decompensation in the work place, and maintain concentration, persistence, pace, and complete work projects in a timely manner, he checked that Ms. Gonzales was markedly limited.   **(#9 at 844-847)**.   Dr. Figueroa also checked that as a result of her depressive symptoms, Ms. Gonzales was extremely limited in her ability to concentrate, persist, and keep pace in a work setting.   **(#9 at 844)**.

The ALJ's Decision found Dr. Figueroa's checked and written statements to be "[un]supported by the medical evidence" **(#9 at 25)**, citing treatment records from four office visits with Diana Smith, NP, (who began treating Ms. Gonzales in 2017 after she moved to Colorado) when Ms. Gonzales appeared less anxious, depressed, and a "little more stable", and her mental status (speech, thought processes, intellect, insight, and judgment) appeared to be normal.   **(#9 at 1080-1081, 1087, 1109-1110, 1212-1213)**.   The Court does not find these identified medical records to be inconsistent or unsupportive, or if properly characterized as such, finds them to be insubstantial in light of the whole record.   Instead, they appear to be

---

[6]   The SSA's regulations define a moderate limitation as an individual's "functioning in this area independently, appropriately, effectively, and on a sustained basis is *fair*."   In contrast, an extreme limitation means the *inability* to "function in this area independently, appropriately, effectively, and on a sustained basis", and a marked limited means an individuals' "functioning in this area independently, appropriately, effectively, and on a sustained basis is *seriously limited*."   20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(F)(2) (emphasis added).

"cherry picking" of instances in the record to find inconsistencies to justify an outcome.   An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence,"   *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), or mischaracterize or downplay evidence to support her findings, *see Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987).

First, Ms. Smith's observations relate to Ms. Gonzales' status on four specific dates. Given the waxing and waning of the severity of Ms. Gonzales' symptoms over a long period of time, they may well represent a momentary condition, but do not represent the longitudinal condition.   In this regard, they are simply pieces of Ms. Gonzales' mental health puzzle. Indeed, Dr. Figueroa's treatment notes indicate similar mental status examination findings. However, these are statements describing Ms. Gonzales' status -- mood, communication, appearance, grooming, etc. – on a given day.   They are not inconsistent with the record evidence that Ms. Gonzales regularly experienced anxiety with panic attacks, exhaustion and racing thoughts, high levels of stress, was twice hospitalized for psychiatric problems, and was reliant on medication, which could certainly support Dr. Figueroa's opinion of a marked limitation. Although it is true that an ALJ is not required to discuss every piece of evidence submitted, *Clifton*, 79 F.3d at 1009-1010, the findings from limited specific mental status examinations do not adequately present Ms. Gonzales' full mental health picture.   This Court acknowledges it may not reweigh the medical evidence and must defer to the ALJ's resolution of evidentiary conflicts, however, the ALJ's failure to identify any conflicting medical evidence or consider the longitudinal record was improper.   *See Hardman*, 362 F.3d at 681; *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008).

Second, Dr. Figueroa's opinions are based on a much longer treatment period than any other provider noted in the record.  Also, contrary to the Decision's findings, the record shows Ms. Smith's treatment notes were largely consistent with Dr. Figueroa's findings and indicated Ms. Gonzales' mental condition varied.  For example, in late 2017 to early 2018, Ms. Smith's treatment notes indicate Ms. Gonzales appeared to be in a manic state and she adjusted her medications to include adding the medications Adderall and Hydroxyzine, which suggests Ms. Smith believed Ms. Gonzales' PTSD, depression, and anxiety were unstable and/or worsening.  Ms. Smith also diagnosed Ms. Gonzales with attention deficit hyperactivity disorder ("ADHD").  Furthermore, the notes indicate Ms. Gonzales reported increased anxiety, difficulty sleeping, and possible side-effects from her medications.  **(#9 at 1075-1088, 1106-1111** ).  In June 2018 (the same month as the hearing), the records note an increase in Ms. Gonzales' appearance of depression and anxiety and that Ms. Smith observed her to be "tearful at times".  **(#9 at 1212-1213)**.  In July 2018, Ms. Gonzales was hospitalized, reporting that her depression and anxiety were "spiraling out-of-control".  At the hospital, she scored 40 on the GAF test, and the physician-on-duty increased her dose of Paxil and prescribed Propranolol, Doxepin for insomnia, and Vistaril for anxiety.  **(#9 at 1218-1222)**.  This record evidence shows no substantial inconsistencies with Dr. Figueroa's opinions and findings.

Third, the record shows frequent medication adjustments and notes indicating the medicine was not entirely effective in handling Ms. Gonzales' problems.  Specifically, the record indicates Ms. Gonzales' providers regularly adjusted her medications from March 2013 through July 2018.  **(#9 at 768-771, 894-909, 1062-1070, 1075-1088, 1106-1111, 1212-1213, 1218-1222)**.

14

The record does not support the ALJ's stated reason for discrediting Dr. Figueroa's opinion—that it is not supported by medical evidence or examination findings at specific treatment sessions. Dr. Figueroa regularly treated Ms. Gonzalez from 2013-2017. The record is replete with evidence supporting Dr. Figueroa's opinion that due to her mental impairments, Ms. Gonzales has mostly marked limitations in areas of mental functioning. Since 2013, Ms. Gonzales has consistently sought medical treatment for her severe mental impairments and has undergone numerous treatment sessions to try to manage her symptoms. Her severe impairments are directly attributed to an objective finding—diagnoses of depression, PTSD, anxiety disorder, cognitive decline, adjustment disorder, and ADHD. Dr. Figueroa's findings and opinions are substantiated by his clinical observations. There is no evidence in the record to support the ALJ's RFC finding other than the non-treating consultants' assessments. **(#9 at 26)**. However, in this Circuit, a consulting physician's opinion does not generally constitute substantial evidence. *See Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988). Additionally, an examining source opinion "is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

In sum, the ALJ's Decision fails to state specific and legitimate reasons sufficient to conclude that Dr. Figueroa's opinion is inconsistent with substantial evidence in the record. As a consequence, his opinion is controlling and the failure to adopt his functional limitations constitutes reversible error. Even if not controlling, insufficient justification is given for according little comparative weight to the opinion.

The Court finds the Decision's rejection of Dr. Figueroa's opinion contravenes applicable

legal standards and that the ALJ's RFC and disability conclusions at step three, four, and five of the sequential analysis are not supported by substantial evidence. Thus, the finding that Ms. Gonzales is not disabled is reversed, and the matter is remanded for reconsideration on steps three, four, and five of the sequential analysis, applying the proper legal standards to the opinion of Dr. Figueroa and engaging specifically in a determination of whether his opinion is entitled to controlling or deferential weight. Thus, the Court need not reach Ms. Gonzales' other specific claims of error in the ALJ's analysis. The Court expresses no opinion as to the ultimate determination of whether Ms. Gonzales is or should be found to be disabled.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's Decision is **REVERSED AND REMANDED.** Upon reconsideration, the Commissioner shall consider all pertinent evidence through the 2018 hearing date. Judgment shall enter in favor of Ms. Gonzales.

Dated this 25th day of March, 2021.

BY THE COURT:

_Marcia S. Krieger_

Marcia S. Krieger
Senior United States District Judge